IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-00896-MSK

TRAVIS BERNARD COLVIN,

   Petitioner,

v.

ANGEL MEDINA, Warden; and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

   Respondents.

_____

**OPINION AND ORDER DENYING PETITION FOR WRIT OF *HABEAS CORPUS***
_____

   **THIS MATTER** comes before the Court pursuant to Mr. Colvin's Petition for a Writ of *Habeas Corpus* **(# 2)** under 28 U.S.C. § 2254, the Respondents' response **(# 17)**, and Mr. Colvin's Reply **(# 21)**.

## <u>FACTS</u>

   The Court will briefly summarize the background of this action here, and elaborate as necessary in its analysis.  In February 1987, Mr. Colvin, along with co-defendants Glenn Jones and Otis Bell, was charged with a number of crimes arising out of the armed robbery of a home, rape of one of the occupants, and theft of a motor vehicle to escape, among other things.  The trial court previously severed Mr. Jones' trial, and on October 7, 1987, Mr. Colvin and Mr. Bell jointly proceeded to trial  However, two days into the trial, it was revealed that the prosecution had violated a sequestration order by revealing a police report to one of the witnesses, and the trial court entertained the possibility of granting a mistrial.  Mr. Colvin objected to a mistrial,

believing that he had selected a favorable jury. Over his objection, the trial court granted a mistrial as to Mr. Colvin only,[1] severing him from Mr. Bell and setting his trial to commence after the conclusion of the Mr. Bell's trial. Mr. Colvin's case was tried to the bench in December 1987. He was convicted on many of the charges and ultimately sentenced to in excess of 100 years in prison.

Mr. Colvin then embarked on an extensive series of appeals and collateral attacks on his conviction, which the Court will address below only to the extent germane to the analysis. It is sufficient to note that, despite the age of Mr. Colvin's conviction, the parties agree – as does this Court – that the instant petition is timely brought.

Mr. Colvin's Petition (**# 2**) raises three claims: (i) he received ineffective assistance from his trial counsel, in violation of the Sixth Amendment to the U.S. Constitution, in two respects – his counsel did not conduct an adequate investigation into the possibility of calling the co-defendants as witnesses in Mr. Colvin's trial; and his counsel did not specifically raise Colorado's Speedy Trial Act in objecting to the trial court's contemplation of a mistrial; (ii) he received ineffective assistance from his appellate counsel, again in violation of the Sixth Amendment, when his appellate counsel did not include a Speedy Trial Act claim in his direct appeal; and (iii) that his Due Process rights to a speedy trial under the 14th Amendment to the U.S. Constitution were violated when the mistrial was declared and his trial was postponed a total of 67 days.

---

[1]Given the incomplete record before this Court, it is not entirely clear why the trial court concluded that the violation of the sequestration order warranted a mistrial and severance with regard to Mr. Colvin only. Nevertheless, that issue is not before the Court in this action.

## ANALYSIS

### A.  Standard of review

A *habeas* petition under § 2254 examines whether the petitioner's state court conviction was obtained in violation of provisions of the United States Constitution.  28 U.S.C. § 2254(d); *Herrera v. Collins*, 506 U.S. 390, 400 (1993).  This Court is generally not concerned with questions of fact decided by the state court or jury, sufficiency of the evidence against the petitioner, or questions of whether the state court properly applied state law, except to the extent that such alleged errors implicated rights guaranteed by the U.S. Constitution.  *Id.* at 400-01.  As a result, the Court presumes factual findings by the state courts to be correct, and the petitioner is required to come forward with clear and convincing evidence to overcome such presumption.  28 U.S.C. § 2254(e)(1).

In considering Mr. Colvin's filings, the Court is mindful of his *pro se* status, and accordingly, reads his pleadings liberally.  *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).  However, such liberal construction is intended merely to overlook technical formatting errors and other defects in his use of legal terminology and proper English.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  *Pro se* status does not relieve Mr. Colvin of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat Mr. Colvin according to the same standard as counsel licensed to practice law before the bar of this Court.  *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

### B.  Speedy trial issue

All three of Mr. Colvin's claims revolve around a contention that the granting of a

mistrial and subsequent postponement of trial of the claims against him violated his 6th Amendment right to a speedy trial.  He contends that his trial counsel was constitutionally ineffective in failing to raise a speedy trial argument in opposition to the trial court's contemplation of granting a mistrial, his appellate counsel was constitutionally ineffective in failing to raise a speedy trial issue on appeal, and that the delay in bringing him to trial directly implicated his 6th Amendment rights.

     1.  Exhaustion

Mr. Colvin is required to have completely exhausted the constitutional aspects of his speedy trial claims in his state court proceedings.  28 U.S.C. § 2254(b)(1)(A).  It is not sufficient that he raise the speedy trial issue in some context; he must raise to the state courts the specific argument that his 6th Amendment rights, not just his rights under Colorado law, were violated. *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  Where a petitioner has failed to fully exhaust a federal claim, the Court must dismiss the claim if exhaustion remains possible, or, if state procedural rules prevent further efforts at exhaustion, the petitioner must demonstrate cause for failing to exhaust the claim and show that prejudice will result if the claim is not considered. *Teague v. Lane*, 489 U.S. 288, 297-98 (1989).

Mr. Colvin's speedy trial claims can be divided into two groups.  There is his substantive speedy trial claim – that is, his contention that by granting a mistrial and delaying his trial until December 1987, the trial court deprived him of his 6th Amendment right to "a speedy and public trial."  The second group of claims are Mr. Colvin's claims that he received ineffective assistance of counsel from both his trial and appellate counsel, in that they failed to promptly assert his substantive speedy trial claim.  The ineffective assistance claims implicate a different

portion of the 6th Amendment – the provision guaranteeing him "this Assistance of Counsel for his defense."  As discussed below, the analysis of whether Mr. Colvin has exhausted each of these groups of claims proceeds differently.

A.   Ineffective assistance claims

Turning first to the question of whether Mr. Colvin exhausted his claims that he received ineffective assistance of his trial and appellate counsel, the record reveals as follows.

In June 1993, Mr. Colvin commenced a collateral attack on his conviction pursuant to C.R.Crim.P. 35, raising an argument (among others) that his trial counsel's failure to assert a speedy trial argument in opposition to the contemplated declaration of a mistrial rendered counsel's performance constitutionally ineffective.[2]  In 1995, the trial court denied this motion, but its order doing so failed to address the speedy trial issue.  Mr. Colvin appealed the trial court's ruling to the Colorado Court of Appeals, but it appears that he limited his arguments on appeal to the issues the trial court had addressed, thus failing to re-raise the speedy trial argument.  Thus, his first Rule 35 motion also failed to fully exhaust the speedy trial issue he now raises.

Mr. Colvin filed additional Rule 35 motions over the years, but it was not until 2002 that he re-raised the argument that his trial counsel was ineffective for failing to raise a speedy trial issue.  In this same filing, he asserted a new argument: that his appellate counsel was ineffective for failing to argue the speedy trial claim during direct appeal of his conviction.  The trial court

---

[2]As is noted herein, the record supplied by the Respondents is incomplete.  For example, it does not contain a copy of Mr. Colvin's first Rule 35 motion.  Nevertheless, all parties appear to agree that Mr. Colvin adequately raised the ineffective assistance of trial counsel claim in this motion.

denied this 2002 Rule 35 motion, first finding that the motion was time-barred, having been filed more than 3 years after Mr. Colvin's conviction. C.R.S. § 16-5-402. Upon a request for clarification, the trial court then explained that its denial was premised upon a finding that the issues had previously been litigated.[3] On appeal, the Colorado Court of Appeals reversed and remanded the matter, finding that the speedy trial argument had been raised in Mr. Colvin's first Rule 35 proceeding, but "has not been addressed on the merits by the [trial] court or by a division of this court." Thus, the Court of Appeals remanded that issue for the trial court to "conduct a hearing and determine whether the mistrial/speedy trial issue was abandoned by defendant" (and, if not, to determine whether it was appropriate to address the merits of that argument and, if so, to so address them).

On remand, the trial court heard arguments from both sides and issued a written order,[4] concluding that Mr. Colvin had indeed abandoned the speedy trial issue. Mr. Colvin appealed that ruling, but the Court of Appeals affirmed it, finding that "because [he] did not reassert this issue until seven years after the 1995 order, the district court's finding that [he] abandoned the mistrial-speedy trial issue is supported by the record."[5] Mr. Colvin sought certiorari on this issue

---

[3]The Respondents have not provided this Court with a copy of the trial court's orders in this respect, whether via a written decision or a transcript of an oral ruling. The Court derives its understanding of these facts from, among other things, representations in Mr. Colvin's brief to the Court of Appeals regarding the 2002 Rule 35 motion.

[4]Mr. Colvin's brief appealing the ruling on remand indicates that "the district court issued a written order denying relief," but the Respondent has not supplied this Court with a copy of that order.

[5]The Court of Appeals also affirmed the trial court's finding that Mr. Colvin had not shown excusable neglect for failing to raise the issue earlier, although it would appear from the scope of the remand order – which explained that "no further findings are necessary" if the trial court found abandonment, and that findings as to excusable neglect were necessary only if the trial court found that "this issue was not abandoned by defendant" – those findings were

from the Colorado Supreme Court, but that request was denied.

Based on this history, with regard to Mr. Colvin's complaint that his trial counsel and appellate counsel were ineffective, the record indicates that he presented those claims to the state trial court, but the court denied those claims on procedural grounds as "abandoned."  It does not appear that Mr. Colvin's appeal of that ruling pressed the substantive ineffectiveness claim, as it instead addressed the correctness of the trial court's finding of abandonment.  In any event, it is evident from the record that the state appellate courts did not reach the merits of the claims of ineffective assistance because it found Mr. Colvin to be procedurally-precluded from asserting those claims.

Because Mr. Colvin's failure to comply with state procedural requirements resulted in the state court failing to review the merits of his constitutional claims, this Court treats the state judgment as "procedurally defaulted"[6] and "rest[ing] on independent and adequate state procedural grounds."  *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  Under *Coleman*, this Court is thus precluded from considering Mr. Colvin's constitutional claims unless he can show cause for the default and actual prejudice as a result of the alleged violation of constitutional law.[7]  *Id.* at 750.

---

unnecessary in light of the trial court's finding of abandonment.

[6]*Coleman* explains that "procedural defaults" – as is the case here – and failure to exhaust state remedies are distinct concepts, although they have the same effects.  501 U.S. at 731-32.  For purposes of efficiency, this Court will nevertheless discuss Mr. Colvin's procedural default under the heading of "Exhaustion."

[7]Alternatively, Mr. Colvin may show that the failure of this Court to address the federal issue would result in "a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  This standard requires Mr. Colvin to show "factual innocence" – *i.e.* that "the State has convicted the wrong person of the crime."  *Beavers v. Saffle*, 215 F.3d 918, 923 (10th Cir. 2000).  Here, Mr. Colvin does not contend that he was not present when the crimes were committed; rather, he

To show "cause" for his procedural default, Mr. Colvin relies on arguments that his <u>post-conviction counsel</u> – *i.e.* the counsel that assisted him on his first Rule 35 motion but failed to note the trial court's oversight of the speedy trial argument and counsel assisting him in subsequent Rule 35 motions that failed to timely re-assert the ineffective assistance claims –also supplied him with ineffective assistance.  The Supreme Court has recognized that counsel's ineffectiveness can, in appropriate cases, constitute "cause" to forgive a procedural default, but only in circumstances where the "assistance [was] so ineffective as to violate the Federal Constitution."  *Gaines v. Workman*, 326 Fed.Appx. 449, 452 (10th Cir. 2009) (unpublished), *citing Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

This poses a particular problem for Mr. Colvin, as the ineffective assistance he received from <u>post-conviction</u> counsel cannot, as a matter of law, constitute a violation of the Constitution.  Unlike Colorado law,[8] the U.S. Constitution does not guarantee criminal defendants the right to post-conviction counsel, and thus, the ineffectiveness of post-conviction counsel cannot constitute a constitutional violation.  *Sam v. Hartley*, 359 Fed.Appx. 12, 19 (10th Cir. 2009) (unpublished), *citing* 28 U.S.C. § 2251(i).  As a result, Mr. Colvin cannot rely on the ineffectiveness of his post-conviction counsel in attempting to show "cause" for procedurally defaulting his ineffective assistance claims against his trial and appellate counsel.

---

argues that he was coerced by his co-defendants into participating.  As with the voluntary intoxication defense in *Beavers*, Mr. Colvin's argument here is one of "legal innocence," not "factual innocence," *id.*, and thus, this Court's refusal to consider his defaulted aarguments does not amount to a "fundamental miscarriage of justice."

[8]*Compare People v. Valdez*, 178 P.3d 1269, 1278 (Colo. App. 2007) (discussing "limited statutory right to the effective assistance of postconviction counsel"), *citing* C.R.S. § 21-1-104(2).

Accordingly, because Mr. Colvin procedurally defaulted his claims premised on ineffective assistance of trial and appellate counsel, and because he has failed to show cause and prejudice for that default, the Court denies those claims without reaching their merits.[9]

B. Substantive speedy trial claim

With regard to Mr. Colvin's substantive 6th Amendment claim – *i.e.* that his constitutional right to a speedy trial was violated outright (and independently of whether his counsel presented such an argument) – the analysis is slightly different. Mr. Colvin did not exhaust this argument through the state courts. That is, Mr. Colvin never fully presented to the state courts an argument that the 294 days[10] that elapsed between the filing of charges against him and the commencement of his trial constituted a violation of the 6th Amendment. By his own admission, his appellate counsel refused to present such an argument on direct appeal; the trial court failed to address any speedy trial issue in his first Rule 35 motion (making it impossible for the Colorado Court of Appeals and Colorado Supreme Court to rule on the substantive issue); and the state courts ultimately concluded that Mr. Colvin abandoned any argument relating to speedy trial violations and refused to reach the merits of such an argument.

Whether one deems this simply a failure to exhaust the substantive claim, or a procedural

---

[9]As the discussion *infa* notes, were the Court to reach the merits of this claim, it would nevertheless find that Mr. Colvin did not experience a violation of his 6th Amendment right to a speedy trial, and thus, his counsel's failure to raise such an argument at either the trial or appellate level cannot have caused Mr. Colvin to suffer any prejudice. *Scott v. Murphy*, 343 Fed.Appx. 338, 340-41 (10th Cir. 2009) (unpublished) (*habeas* petitioner's contention that trial counsel was ineffective in failing to "keep track of his 180 day" speedy trial clock was without merit, as 217-day delay between charges and plea presented "no colorable claim of a Sixth Amendment violation, and therefore . . . no objectively unreasonable performance by Scott's counsel.")

[10]Mr. Colvin calculates the span as 299 days. The difference is immaterial.

default of that claim (in that Mr. Colvin can no longer assert it via a Rule 35 motion) is immaterial; in either event, Mr. Colvin must show cause for failing to fully present the issue and demonstrate prejudice as a result.

Here, arguably, Mr. Colvin has shown cause for failing to adequately present the substantive speedy trial claim - he contends that his appellate counsel was ineffective in failing to urge that argument on direct appeal.  This Court will assume, without necessarily finding, that such a contention is sufficient to demonstrate "cause" under *Edwards*.

However, the Court has profound doubts that Mr. Colvin has adequately alleged that he was prejudiced as a result of any violation of his 6th Amendment right to a speedy trial.  Mr. Colvin argues that the prejudice resulting from the two-month delay of his own trial (after the court declared a mistrial) was that "his ability to defend himself was severely impaired when the prosecution's key witness/victim's testimony conformed to the state's case where it hadn't before the delay."   This contention, which is unsupported by any citation to trial records or other evidence[11], is entirely conclusory and speculative.  Even assuming Mr. Colvin is correct that the victim changed his testimony after the co-defendants' trial, Mr. Colvin had an opportunity (indeed, one enhanced by the record of the victim's prior testimony) at his own trial to impeach the victim's testimony on this ground.[12]   (Mr. Colvin's brief appears to imply that his trial

---

[11]Mr. Colvin's brief contends that at trial, he attempted to impeach the victim's testimony as inconsistent with prior statements, causing the victim to explain those inconsistencies by saying  "we've had more opportunity to have (said) increased."  It is unclear to the Court what this single, out-of-context, grammatically-idiosyncratic statement is supposed to mean.

[12]As discussed *infra*, severance of Mr. Colvin from his co-defendants also arguably benefitted Mr. Colvin insofar as he, at least theoretically, then had the opportunity to call the co-defendants as exculpatory witnesses in his own trial.

counsel did just that, albeit unsuccessfully.)  On this ground, the Court would find that Mr.

Colvin has failed to demonstrate prejudice resulting from his failure to exhaust/procedural

default of the substantive 6th Amendment claim.

Nevertheless, in an abundance of caution and in the interests of fully addressing Mr.

Colvin's issues, the Court will proceed to briefly examine the merits of the claim as well.

2.  <u>Governing law</u>

It is essential to recognize that this Court is concerned only with the speedy trial

guarantee found in the 6th Amendment to the United States Constitution, not to any speedy trial

rights conferred by state statute.  Colorado state law may fix a definitive speedy trial period, but

under the Constitution, "the right of a speedy trial is necessarily relative," and cannot "be

quantified into a specified number of days or moths." *Barker v. Wingo*, 407 U.S. 514, 522-23

(1972).  The assessment of whether a delay in bringing a criminal defendant to trial violates the

defendant's 6th Amendment rights requires balancing four factors: (i) the length of the delay, (ii)

the reason for the delay, (iii) whether the defendant asserted that right, and (iv) the prejudice to

the defendant.  *Id.* at 530.  However, the first factor – the length of the delay – is a threshold that

must be crossed; unless the length of delay arises to the level of "presumptively prejudicial,"

"there is no necessity for inquiry into the other factors that go into the balance.  *Id.*

The Supreme Court in *Barker* declined to fix a particular time period that would warrant

a presumption that delay beyond it was prejudicial, explaining only that "the delay that can be

tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy

charge," and noting that "the First Circuit thought a delay of nine months overly long . . . in a

case that depended on eyewitness testimony."  *Id.* at 531 & n. 31.  In a subsequent decision, the

11

Supreme Court noted in *dicta* that "lower courts have generally found postaccusation delay

'presumptively prejudicial' at least as it approaches one year." *Doggett v. U.S.,* 505 U.S. 647,

652 n. 1 (1992).  The 10th Circuit has also refused to articulate a bright-line date upon which

further delay is presumptively prejudicial, but a series of rulings from that court have found that

delays of up to 8 months did not rise to the level of "presumptively prejudicial." *Scott v.*

*Murphy*, 343 Fed.Appx. 338, 340 (10th Cir. 2009) (unpublished), *citing Harvey v. Schillinger*, 76

F.3d 1528, 1533 (10th Cir. 1996).

### 3. No speedy trial violation

The Court first notes that Mr. Colvin's arguments concerning prejudice reflect that the

core of his substantive speedy trial claim is not the roughly 230-day period that passed before the

aborted October 1987 trial commenced, but rather, the roughly 60 days that passed between the

trial court's declaration of a mistrial and the commencement of Mr. Colvin's own trial in

December 1987.   The Court has some doubt as to the appropriateness of assessing a speedy trial

claim on such an incremental basis.   Were it permissible for defendants to slice up pretrial

proceedings into small increments and then raise speedy trial challenges based only certain

individual increments, the holistic nature of the speedy trial inquiry is replaced with a

microscopic examination of the propriety of discrete events and rulings during the life of the

case.[13]  In any event, such a contention by Mr. Colvin would be utterly unavailing.   It is clear

that a delay of approximately 60 days, taken on its own, cannot give rise to a presumption of

---

[13]Indeed, parsed this finely, Mr. Colvin's "speedy trial" claim is more akin to a challenge
to the trial court's decision to grant a mistrial as to him.  The Court does not understand Mr.
Colvin to argue that a delay of 60 days in commencing a new trial after a mistrial is declared is
particularly dilatory; rather, the Court understands that Mr. Colvin is primarily upset that the
mistrial was declared.

prejudice when the 10th Circuit has found much longer periods to be insufficient to do so. *Harvey*, 76 F.3d at 1533.

More likely, the proper analysis of Mr. Colvin's substantive speedy trial claim requires the Court to examine the entirety of the 294-day period between the bringing of charges against Mr. Colvin and his trial. This Court has some doubt that the 294-day period is materially longer than those in cases such as *Scott* (217 days) and *U.S. v. Kalady*, 941 F.2d 1090, 1095-96 (10th Cir. 1991) (approximately 240 days), where the 10th Circuit found the delay insufficient to give rise to a presumption of prejudice.

Nevertheless, Mr. Colvin is correct when he contends that 294 days can, arguably, be said to "approach[ ] one year." *Doggett,* 505 U.S. at 652 n. 1. This Court is reluctant to grant *dicta* from *Dogget* – particularly *dicta* that the Supreme Court clearly intended to be construed in only a general sense – more effect than it warrants, but in deference to Mr. Colvin, the Court will assume that a delay of 294 days between charges and trial is sufficiently long that examination of the remaining *Barker* factors is warranted.

The first *Barker* factor is the length of the delay. As noted above, this Court does not find 294 days to be particularly lengthy, especially given the number and severity of charges against Mr. Colvin and his co-defendants[14] and the need for additional time to coordinate pretrial proceedings in multi-defendant cases.

The second *Barker* factor inquires into the reason for the delay. The record here is absolutely silent as to the reasons why approximately 230 days elapsed between the charges

---

[14]More than a dozen counts were charged, covering offenses including sexual assault, kidnapping, attempted murder, aggravated robbery, and assault on an at-risk adult.

against Mr. Colvin and the aborted October trial, and, for that matter, the reason why Mr. Colvin's severed trial could not commence for an additional 60 days.  Nevertheless, because the Court does not find 294 days to be unusually dilatory in cases such as these, inquiry into the "reasons" for such a delay does little to advance Mr. Colvin's position.

Mr. Colvin argues that the prosecution is entirely at fault for the 60-day delay between the aborted October trial and his trial in December, because the prosecution violated the sequestration order and forced the mistrial.  It may be true that the prosecution is solely responsible for that 60-day delay, but that fact alone is not dispositive, particularly where there is no indication as to who – if anyone – is responsible for the remaining 230-day delay.  The Court appreciates that Mr. Colvin would like to limit the analysis to the 60-day period for which he bears no culpability, but, as explained above, such an incremental examination of the pretrial period is inconsistent with Supreme Court's direction that a speedy trial analysis examine and weigh the totality of the circumstances.  Because the Court cannot say that the prosecution is culpable for anything more than the 60-day delay between October and December 1987, this factor weighs, at best, only slightly in Mr. Colvin's favor.

The third *Barker* factor inquires whether Mr. Colvin actually asserted his speedy trial rights.  As discussed above, it is undisputed that his counsel did not raise speedy trial as a concern when opposing the notion of a mistrial.  Mr. Colvin contends that, because his counsel was ineffective in failing to assert the speedy trial argument, "the responsibility for the default should be imputed to the state." *Citing Coleman*, 501 U.S. at 754.  This argument is unavailing.  As discussed above, this Court is precluded from reaching the question of whether Mr. Colvin's trial counsel was constitutionally ineffective.  Because the Court cannot reach that issue, and

14

thus, because Mr. Colvin cannot show that his counsel was constitutionally ineffective, "in the absence of a constitutional violation . . . [Mr. Colvin] bears the risk . . . for all attorney errors made in the course of representation." *Id.*   In any event, the Court finds that in light of the preceding two factors, this factor bears little weight in the overall analysis.

Finally, the Court examines the factor of prejudice to Mr. Colvin from the delay.  As discussed above, Mr. Colvin argues that the primary prejudice he suffered from the delay was that, in the interim between October and December, the victim testified in the co-defendants' case and was able to sharpen his testimony to be more effective against Mr. Colvin.  The Court has previously observed that this contention is largely conclusory and speculative, and it remains so.  Mr. Colvin also makes brief arguments that he was prejudiced insofar as the granting of the mistrial caused him to lose what he believed to be a favorable jury and that, in general, the delay between charging and trial caused "unnecessary post-accusation incarceration and anxiety." These, too, are entirely conclusory and speculative items of prejudice.  The simple fact of the matter is that the decision of the trial court to grant a mistrial as to Mr. Colvin and sever his trial from his co-defendants may have been a blow to Mr. Colvin's strategy in some abstract way, but it worked no concrete and particular prejudice as to his legal rights.

Weighing these various factors leads the Court to the conclusion that the 294-day delay in bringing Mr. Colvin to trial does not amount to a violation of his speedy trial rights under the 6th Amendment.  The delay in bringing him to trial is entirely reasonable given the number and severity of the charges here.  The charges against Mr. Colvin (and his co-defendants) are not the "ordinary street crime" that *Barker* anticipates could be brought briskly to trial.  407 U.S. at 531. This remains true even in light of the trial court's decision that granting a mistrial and severing

Mr. Colvin was required (a decision which, this Court notes, is not directly challenged by Mr. Colvin in the Petition).   A delay of an additional 60 days, during which the court completed the co-defendants' trial, is also entirely reasonable given the nature of crowded judicial dockets, and Mr. Colvin can point to nothing more than abstract and speculative harm that befell him as a result of that additional delay.

Accordingly, this Court finds that the *Barker* analysis yields the conclusion that the delay experienced by Mr. Colvin did not violate his 6th Amendment rights.

### C.  Ineffective assistance in failing to call co-defendants

Mr. Colvin's remaining claim asserts that his trial counsel was ineffective in failing to call Mr. Colvin's co-defendants as exculpatory witnesses during his trial.   Mr. Colvin contends that, if called, the co-defendants would have corroborated his defense that he was not a voluntary participant in the crimes, and that the co-defendants essentially coerced him into participating.

#### 1.  Exhaustion

The parties agree that this matter was fully exhausted through Mr. Colvin's first Rule 35 motion in the state court.   After conducting an evidentiary hearing on that motion, during which the trial court heard from both Mr. Bell and Mr. Jones, as well as their counsel, the court concluded that Mr. Colvin's counsel "did make inquiry with the Co-defendants' counsel concerning the availability of either Defendant Jones or Defendant Bell testifying in Defendant Colvin's trial."   The trial court found that both co-defendants' counsel "testified that they would do everything in the[ir] power to prevent their clients from testifying until such time as all

avenues of appeal have been exhausted."[15]  As a result, the trial court concluded that Mr. Colvin's counsel decision not to attempt to call the co-defendants did not amount to ineffective assistance.

The Colorado Court of Appeals affirmed, finding that "whether to call a particular witness is a tactical decision," and that such strategic choices "will not support a claim for ineffective assistance of counsel."  In doing so, the Court of Appeals noted that Mr. Colvin had supplied only the transcript of the Rule 35 testimony by his co-defendants, not the testimony given by his co-defendants' counsel.  Noting the absence of the record that supported the trial court's factual findings, and finding that it was Mr. Colvin's obligation to produce that record, the Court of Appeals "presume[d] that the actions of the trial court were correct."[16]  Mr. Colvin unsuccessfully pressed this issue to the Colorado Supreme Court, thus exhausting this claim.

2.  Governing law

The Supreme Court has established a two-prong test to review ineffective-assistance-of-counsel claims.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  Mr. Colvin must

---

[15]The trial court did not make any particular findings as to whether Mr. Bell or Mr. Jones would have testified favorably to Mr. Colvin had they been called.  Mr. Colvin contends that during evidentiary hearings on his Rule 35 motion, "both gave exculpatory testimony that corroborated Mr. Colvin's defense, and [stated] that no attorney contacted them regarding testifying in Mr. Colvin's trial, and that had they been called, they would have testified in Mr. Colvin's behalf."  Although Mr. Colvin cites to the relevant portions of the transcript of this hearing, no part of that transcript has been supplied to this Court by either party.

[16]Mr. Colvin eventually presented the entire record of the first Rule 35 hearing as part of his submissions with his 2002 Rule 35 motion.  The Colorado Court of Appeals commented on the submission of the record from the co-defendants' counsel's testimony, finding that "at that hearing, defense counsel for both co-defendants testified that they would have advised their clients not to testify at defendant's trial," and that "defendant's counsel testified that when he asked co-defendants' counsel if their clients would be willing to testify in defendant's trial, both counsel communicated that their clients were not willing to testify."

demonstrate both that his counsel's performance fell below an objective standard of reasonableness and that his counsel's deficient performance was prejudicial to Mr. Colvin. *See id*. at 687. Judicial scrutiny of counsel's performance is "highly deferential," and there is a strong presumption that counsel's performance falls within the range of "reasonable professional assistance." *Id*. In order to demonstrate prejudice, Mr. Colvin must establish that counsel's performance rendered the proceedings "fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). If Mr. Colvin fails to satisfy either prong of the *Strickland* test, the ineffective assistance claims fail. *See Strickland*, 466 U.S. at 697.

### 3. Mr. Colvin has not shown ineffective assistance

Considering first whether Mr. Colvin has shown that his counsel's performance "fell below an objective standard of reasonableness," this Court is particularly cognizant of the trial court's factual findings during the Rule 35 proceedings. Specifically, the trial court found that Mr. Colvin's counsel inquired of counsel for both co-defendants whether the co-defendants would be willing to testify for Mr. Colvin, and that both counsel stated that they would advise their clients not to do so. Pursuant to 28 U.S.C. § 2254(e)(1), this Court is required to presume the correctness of the trial court's factual findings on this issue, and Mr. Colvin is required to show "by clear and convincing evidence" that such a finding is incorrect.

Mr. Colvin briefing admits that the trial court's finding is correct as to the testimony given by Mr. Jones' counsel. Mr. Colvin states that Mr. Jones' counsel testified that "she would certainly ask out of courtesy [if Mr. Jones would be willing to testify for Mr. Colvin], but that

she would advise him not to."[17]   Construed liberally, however, Mr. Colvin's reply brief contends

that the trial court's findings misconstrue the testimony of Mr. Bell's counsel.  Mr. Colvin

contends that Mr. Bell's counsel "had no recollection of any . . . conversations being about his

client testifying in Mr. Colvin's trial."  In support of this proposition, Mr. Colvin cites to

passages from the hearing transcript, but neither side has supplied those hearing transcripts to the

Court.

28 U.S.C. § 2254(f) explains how this Court should address "challenges [to] the

sufficiency of the evidence adduced in [a] State court proceeding to support the State court's

determination of a factual issue."  The burden is initially placed on "the applicant [to], if able, [ ]

produce that part of the record pertinent to a determination" of the disputed factual issue.  If,

"because of indigency or other reason," the applicant is unable to produce the relevant record,

"the State shall produce such part of the record and the Federal court shall direct the State to do

so by order directed to an appropriate State official."  If the state is unable to provide the

pertinent part of the record, "the court shall determine under the existing facts and circumstances

what weight shall be given to the State court's factual determination."

The record hear indicates that Mr. Colvin is able to produce the relevant portion of the

Rule 35 hearing transcript.  The Court notes that Mr. Colvin is not proceeding *in forma pauperis*

---

[17]Mr. Colvin appears to draw a distinction between inquires that (he admits) were made
to Mr. Jones' counsel prior to the declaration of a mistrial, and his counsel's alleged failure to
renew those inquires after the co-defendants' trials had concluded and before Mr. Colvin's trial
began.  Nothing in Mr. Colvin's briefing refutes the trial court's finding that Mr. Jones' counsel
testified that she would have advised Mr. Jones not to testify "until such time as all avenues of
appeal have been exhausted."  Because Mr. Jones' appeals had not been exhausted at the time
Mr. Colvin went to trial, it is thus immaterial that Mr. Colvin's counsel never renewed his
discussions with Mr. Jones' counsel, as her advice to Mr. Jones would have remained the same.

in this action; he was directed (**# 1**) to file an application pursuant to 28 U.S.C. § 1915, but never did so.  Moreover, the record reflects that Mr. Colvin has a copy of the hearing transcript available to him, as his reply brief cites to passages from that transcript by page and line number. Thus, because Mr. Colvin is able to produce the relevant transcript,[18] but has not done so, the Court is unable to conclude that he has shown, by "clear and convincing evidence" that the trial court's factual determination was erroneous.

In any event, the Court observes that Mr. Colvin's current contention – that Mr. Bell's counsel never testified that he would have advised his client not to serve as a witness in Mr. Colvin's trial – is inconsistent with an argument that Mr. Colvin, through counsel, has previously made.  In Mr. Colvin's Petition for Writ of Certiorari to the Colorado Supreme Court on his initial Rule 35 motion, he characterizes the testimony of counsel for both co-defendants as being "incomplete," but states that "the essence of their recollections was that [Mr. Colvin's counsel] had asked if the co-defendants would testify and <u>both other counsel</u> said they would advise against testimony of their clients."  *Docket* # 9-7 at 4 (emphasis added).  Thus, Mr. Colvin has not shown by clear and convincing evidence that the trial court's factual findings are incorrect.

Once this Court accepts as true the factual finding that counsel for both co-defendants told Mr. Colvin's counsel that they would advise their clients not to testify, Mr. Colvin's claim

---

[18]Assuming that Mr. Colvin was unable to produce the transcript, this Court has discharged its obligation under § 2254(f) by directing the Respondents, as "appropriate state official[s]" to produce the appropriate transcript.  *See Docket* # 16, ¶ 1(b).  The Court assumes that, because the Respondents failed to file the Rule 35 hearing transcript, it "cannot provide it." Thus, the Court would proceed to determine how much weight to give the trial court's finding "under the existing facts and circumstances."  It would find that the record reveals that the Colorado Court of Appeals specifically examined the Rule 35 transcript and, based upon that review, concurred with the findings of the trial court.

of ineffective assistance dissapates.  This Court cannot say that an attorney's decision not to pursue calling a witness whose counsel has represented that they would advise that witness not to testify is performance that falls below an objective standard of reasonableness.  In such circumstances, it is reasonable for the attorney to assume that the witnesses will heed the advice of their counsel not to testify, and to conclude that time and effort that would be spent procuring the appearance of witnesses who would ultimately remain silent could be better spent exploring other lines of defense.  *Compare U.S. v. Hasan*, 586 F.3d 161, 171 (2d Cir. 2009) (finding no ineffective assistance in trial counsel failing to present testimony of witnesses, where counsel subpoenaed witnesses but witnesses were later advised by independent counsel not to testify).  Accordingly, because Mr. Colvin cannot show that his counsel's failure to secure the testimony of his co-defendants fell below an objective standard of reasonableness, his claim of ineffective assistance fails.

## CONCLUSION

For the foregoing reasons, Mr. Colvin's Petition for Writ of *Habeas Corpus* (**# 2**) is **DENIED**.  The Court has *sua sponte* considered whether any of Mr. Colvin's contentions warrant the issuance of a Certificate of Appealability pursuant to 28 U.S.C. § 2253(a).   Having considered the standards of *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), the Court finds that Mr. Colvin has not made a substantial showing of the denial of a constitutional right such that reasonable jurists could disagree as to the disposition of his petition.  28 U.S.C. § 2253(c)(2).

Accordingly, the Court also denies a Certificate of Appealability.

Dated this 22nd day of November, 2010

BY THE COURT:

Marcia S. Krieger
United States District Judge